THE MAYOR AND COUNCIL OF WILMINGTON, d. b. a. *vs.*
CHARLES WICKS, p. b. r.

New Castle County, November Term, 1896.

**Payment.**—Money paid under protest for a city license under an ordinance sub-
quently declared invalid, is a voluntary payment and cannot be recovered
back.

This was an action brought to recover back $10, amount paid
for license under what was termed the milk ordinance, which pro-
vided :

Section 3. Each and every person or persons desiring to
engage in the business of selling milk or cream in the City of Wil-
mington shall apply to the Board of Health for a license.

Section 5. Provided that any person engaged in the said busi-
ness who should not take out such a license, should upon conviction
before the Municipal Court forfeit and pay a sum not exceeding
ten dollars for the first offense, and for the second offense, twenty-
five dollars, and should forfeit his license.

Section 11. Provided that the Milk Inspector shall prosecute
before the Municipal Court all offenders against this ordinance.

Section 12. Provided that all fees collected for said licenses
should be for the use of the city and should be deposited with the
City Treasurer, the same as other fines or fees are now paid.

At the trial, it was admitted that the ordinance entitled "An
Ordinance to Prevent the Adulteration of Milk and Cream and to
Provide for the Inspection thereof," was passed at the City Hall,
April 18, 1895, and is a city ordinance; the incorporation of the
city and its powers as contained in its charter; that the money paid
to the Register of the Board of Health, or what was practically
paid to the Board of Health, has passed from the Board of Health
into the city treasury and is now in possession of the defendant;
and that this ordinance subsequent to the payment by the plaintiff
of the fee for his license was declared void.

Statement.

The plaintiff, being called, testified that he was a resident of the City of Wilmington and was engaged in the milk business, previous to the 18th day of April, 1895, the date of the passage of the milk ordinance; that sometime during the month of May of 1895, he received notice from the city with a copy of the ordinance, and a few days after that the following notice appeared in the newspapers:

"All persons engaged in the sale of milk are hereby notified to take out a license as provided in the ordinance on or before Saturday next, June 8. After that time any person engaged in the sale of milk who has not complied with the law will be prosecuted. By order of the Board of Health.

> "W. C. R. COLQUHOUN,
> "Secretary."

He said, that in preference to being fined and having to pay for the license, he considered it best to pay the license, and went to the office of the Board of Health and paid it to Mr. Colquhoun. " If that is the law I propose to be a law-abiding citizen, and if this is not the law expect to have my money back." He said, " Well, I will tell you straight; I will be damned if you get your money back." He also said, " If I sold a half pint of milk, I had to pay that license or be arrested." The plaintiff thereupon paid the fee and got the license. In answer to a question whether he had demanded the money shortly after the Court declared the ordinance invalid, he said:

I went to Mr. Colquohoun first, and he told me to come up next day and he would see what he could do for me. On my visit to his office the next day I was very much astonished, as I always thought pretty well of Mr. Colquohoun—he asked me if I thought he was any discount bank, and he referred me to the Mayor. I went to the Mayor and he referred me to Mr. Harman; and Mr. Harman referred me to Esquire O'Neill, down Tatnall street. He is a councilman now. I called on Squire O'Neill, as he called him,

and Mr. O'Neill told me he was very much astonished at Mr. Harman sending me down to him, when Mr. Harman was the man they expected to get their information from. I asked it from all of them.

The plaintiff below defendant having closed, *Harman*, city solicitor, moved for a nonsuit, contending as follows:

1. A voluntary payment of money under a claim of right cannot be recovered back. 18 Am. & Eng. Ency. of Law 214; 2 Dillon §§ 940, 942, 944, 945; 2 Desty, Taxation 791. (a) This principle of law applies alike to taxes and license fees. 2 Dillon § 940. (b) Even though the payment of a license fee be a prerequisite to engage in business, and the law is afterwards declared to be unconstitutional. *May vs. City of Cincinnati*, 1 Ohio 268; *Robt. Grimley vs. County Santa Clara*, 68 Cal. 575; *O'Brien vs. County of Colusa*, 67 Cal. 503; *Garison vs. Tillinghast*, 18 Cal. 408; *Bailey vs. Town of Paullina*, 69 Iowa 463; *Page et al. vs. Sackett et al.*, 14 Iowa 87; *Town of Ligonier vs. Ackerman*, 46 Ind. 352.

2. The payment of money simply under "protest" is a voluntary payment. 18 Am. & Eng. Ency. of L. 220; 2 Dillon § 940. (a) To make the payment involuntary, the payment must be made under compulsion, as for instance to prevent the immediate seizure of one's goods or to prevent the arrest of his person. 2 Dillon §§ 940-942. (b) If the payment can only be enforced by a *proceeding at law*, the payment, if made, will be a voluntary payment. 18 Am. & Eng. Ency. of Law 220; *Peebles vs. City of Pittsburg*, 101 Pa. 304.

*Hilles*, for the plaintiff below, respondent.

The amount paid was illegally exacted and paid under compulsion and threats of proceedings under the said ordinance; and it could in no sense be considered voluntary being a consideration precedent to the plaintiff's right to follow his calling.

Assumpsit for money had and received is the proper remedy in such cases; 2 Dillon, Mun. Corp. § 939; Cooley, Taxation 815.

Argument.

It is general principle that money paid to prevent an illegal seizure of property or person by an officer under claim of authority, may be recovered back in an action for money had and received on the ground that the payment was compulsory or by duress or extortion. Under this rule illegal taxes or other public exactions paid to prevent such seizure or remove such detention, may be recovered back, unless otherwise provided by statute. 2 Dillon, Mun. Corp. §942 ; Cooley, Taxation 804-807 ; *Lamborn vs. Commissioners*, 97 U. S. 181; *U. P. R. R. Co. vs. Dodge*, 98 U. S. 541. Under the municipal charter and ordinances a failure to pay was a criminal offence punishable in the Municipal Court without indictment or jury trial.

A payment is involuntary if made under actual or *threatened* exercise of power, 2 Dillon, Mun. Corp. § 942, 943 ; Cooley, Taxation 814.

In the leading case of *Astley vs. Reynolds*, 2 Strange 915, the rule governing the cases is thus stated : " Where the rule *volentia non fit injuria* is applied it must be where the party had his freedom in exercising his will." The issue of a warrant for his arrest is not required, only reasonable expectation of it. *Allen vs. Burlington*, 45 Vt. 202 ; *Princeton vs. Vierling*, 40 Ind. 340 ; *Harvey vs. Olney*, 42 Ill. 336 ; Smith, Leading Cases 1707; 2 Dillon, Mun. Corp. § 943 ; Cooley, Taxation 314. Nor need he wait until property is actually taken by legal process, if the circumstances fairly lead to the conclusion that waste and expense can be avoided only by payment. *Howard vs. Augusta*, 74 Me. 79; *Ruggles vs. City of Fondulac*, 53 Wis. 436 ; *Parcher vs. Maathon County*, 52 Wis. 388, and authorities *supra*.

Where payment of a license fee is a condition to the right to continue a legal employment it is not voluntary. Cooley, Taxation 572 ; *County of Lasalle vs. Simmons*, 10 Ill. 513 ; *Morgan vs. Palmer*, 2 B. & C. 729 ; *Princeton vs. Vierling*, 40 Ind. 340 ; *Harvey vs. Onley*, 42 Ill. 336 ; *Catoir vs. Waterson*, 38 Ohio 319 ; *Stephen vs. Daniels*, 27 *Id.* 527 ; *Baker vs. Cincinnati*, 11 *Id.* 534 ;.

*Westlake vs. St. Louis*, 77 Mo. 47 ; *Leonard vs. Couton*, 35 Miss. 189.

This rule has been lately applied in England to the recovery by the consignor of goods given to a railroad company for carriages, of the excess charged by the railway company. *Great Western Railway vs. Sutton*, 4 L. R. 226, 262, 263, *London & N. W. vs. Evershed*, 3 L. R. App. Cas. 1029; *Parker vs. Great Western Railway*, 7 Man. & Gr. 253, 292.

A demand is not necessary before bringing suit to recover back illegal taxes. *Look vs. Industry*, 51 Me. 375; Cooley, Taxation 815.

The only purpose of the protest is to show that the payment was involuntary, and no particular form is necessary. Cooley, Taxation 810; *Erskin vs. Vanarsdale*, 15 Wall. 75-77. In a suit to recover back the amount of taxes paid without protest on an illegal assessment, the plaintiff is entitled to interest from the time of demanding repayment, or from the date of the writ, when no previous demand has been made, but when such taxes are paid under protest, the plaintiff is entitled to interest from the date of payment; *Boston & C. Co. vs. Boston*, 4 Metc. 181.

LORE, C. J. The court have considered this motion for a nonsuit, and from the undisputed facts before us, do not think this a case of involuntary payment, but a case of voluntary payment, according to law. We therefore think a nonsuit should be entered.

*Hilles*, for the plaintiff. I refuse to take a nonsuit.

LORE, C. J., (charging the jury.) This is an action brought to recover back money that was paid by Wicks, the plaintiff, to the City of Wilmington for a license to sell milk. Wicks claims to have paid the money under protest and involuntarily. Upon an examination of the case as presented to the Court and the jury, the Court think that it is a case of voluntary payment, and not of involuntary payment in contemplation of law.

We therefore direct you to find a verdict in favor of the Mayor and Council of Wilmington, defendant below, appellant.